## Case No. 4,418.

### The ELMIRA SHEPHERD.

[8 Blatchf. 341.][1]

Circuit Court, E. D. New York. April 24, 1871.

Edwin T. Rice, for libellant.
Charles Donohue, for claimant.

WOODRUFF, Circuit Judge. In the latter part of the month of February, 1865, the libellant shipped on board the sloop Elmira Shepherd, then lying at Sand's Point, in the waters of Long Island Sound, within the state of New York, a large quantity of onions and other vegetables, to be carried thence and delivered at the port of New York, the voyage of the sloop being begun, prosecuted, and ended wholly within the bounds of the state. On arrival, the onions and other vegetables were delivered. This libel is filed to recover for damages alleged to have been caused by bad stowage, a portion of the onions being placed on the bottom of the vessel, in the hold, where, by reason of the leaking of the vessel. salt water, to the depth of several inches, flowed around the lower tier of barrels, soaking in and wetting the onions. A decree was had

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

in favor of the libellant in the district court. The claimant insists, that the injury to the onions, if any, was caused by frost, and was not the result of bad stowage; that the libellant ought not to recover, because no sufficient notice of loss or claim of injury to the onions was made or given to the carrier when they were delivered; and that the onions were removed and sold without giving to the carrier a proper opportunity to protect himself against a claim that they were damaged, by examining them or inspecting them, to ascertain the truth.

In my judgment, the clear preponderance of the evidence is, that the onions were damaged by salt water, which leaked into the vessel; and, although there was testimony that there was some frozen water when the onions were taken out of the vessel, the proof is that it was the wetting by salt water, and not the frost. which caused the injury. There was evidence that, as to some of the barrels, the carrier knew, when he delivered them, that the water had flowed in; but it is also true, that the onions were removed and were sold without any claim or notice that the owners claimed that they had sustained an injury entitling them to compensation from the carrier. Receiving the onions, removing them, and, after examination and discovery of the alleged injury, selling them, without notice to the carrier, entitles him, and calls upon the court, to regard the claim with some suspicion. In some sense of fairness, it would have been just to the carrier, if still in port, to notify him of the alleged damage, and give him an opportunity to inspect them; and, in determining the question of fact, the court may properly require very full and clear proof of the allegations of the libellant, before crediting a claim made under such circumstances. But the conduct of the libellant in this respect constitutes no legal bar to his recovery, if his claim is established by clear and distinct proof. The carrier was, in fact, aware that some of the barrels were wet. He, knowing that he was under an obligation to deliver in good order, had a right to make such examination as was necessary, to ascertain the truth, before he parted with the possession, so far as could be ascertained at that time. But no authority is cited to me in support of the proposition, that, after goods are delivered by a carrier, and, on subsequent examination, it appears that they were injured on the voyage, the owner cannot recover for the injury, unless, before he sells the damaged goods, he notifies the carrier of the fact, and claims compensation. All that can be said is, that the conduct of the owner may be scrutinized, and, if there appear want of good faith, concealment, and, especially, a disposition of the goods for the purpose of preventing inspection, this would go far to warrant the belief that his claim was groundless. Here, the proof comes from a witness apparently disinterest-

ed. The fact of damage is sufficiently proved, and also its extent. It is not improbable that the effect of the salt water was not fully developed until after the onions were delivered. At all events, the proof fully sustains the claim of the libellant.

It was suggested, on the argument, that the district court has no jurisdiction, in admiralty, of a contract of affreightment, where the voyage contemplated begins and ends in the state, and is prosecuted only in waters within the state. This has, unquestionably, been stated in terms in some cases, and in substance and effect in many. But, whatever doubt was caused by the earlier decisions, the question has been put at rest by the case of The Belfast, in the supreme court of the United States (7 Wall. [74 U. S.] 624). I assume that this case was not in the mind of the counsel, when the point was urged upon my attention. It would not be difficult to show, that there is no such limitation of the jurisdiction of courts of admiralty, and that the jurisdiction of the admiralty over causes of action founded on contract, as well as those founded in tort (see The Brooklyn [Case No. 1,938]), depends not on the question where the voyage of the vessel begins or terminates, but on the question whether the contract is to be performed, or the tort is committed, upon navigable waters; and, taking the whole course of decision prior to the case of The Belfast [supra] this will be found the result upon authority. It is, however, quite unnecessary, and, perhaps, impertinent, for me to do more than refer to that case.

The libellant is entitled to a decree for the damages and costs awarded him in the district court, with his costs on the appeal to this court.